# 2017-61504 / Court: 055

## CAUSE NO.

| | | |
|---|---|---|
| STACEY ODDO, a FEMME SOLE AND JOHN BURKLAND ET UX PLAINTIFFS | § § § | IN THE        JUDICIAL |
| | § | |
| vs. | § | DISTRICT COURT |
| | § | |
| UNION PACIFIC RAILROAD CO. DEFENDANT | § § | OF HARRIS COUNTY TEXAS |

## PLAINTFFS ORIGINAL PETITION AND REQUEST FOR DISCLOSURES

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff's Stacey Oddo and John Burkland et ux complains of the Union Pacific Railroad Co. Inc. ("UPRR") as successor in interest to the rights and privileges of the Houston, La Porte and Galveston Railroad in unlawfully occupying an abandoned easement, violating the rights of the Plaintiffs in leasing land and property rights owned by the Plaintiffs and are seeking to Quiet Title in the property. Furthermore Plaintiffs appeal the awards in three condemnation cases instituted by the State of Texas to acquire land from the UPRR that they do not own and to restore the properties in accordance of law unto the Plaintiffs, and for Cause of Action would respectfully show unto the Court as follows:

### 1.

### DISCOVERY

Stacey Oddo, a Femme Sole, and John and Betty Burkland, (hereinafter Plaintiff's, or "Owners") intends to conduct discovery under a Level Two (2) Discovery Control Plan. Tex. R. Civ. P. 190.3

### 2.

1

Exhibit A

## STATEMENT OF RELIEF SOUGHT

Owners seek to quiet title in the abandoned railroad easement (hereinafter "Easement") that crossed their property by virtue of a grant to the Houston, LaPorte and Galveston Railroad Company over across and through the eastern part of their property located in the Ritson Morris League Abstract 52, in Harris County Texas; and to recover from the railroad the fruits of their misuse, trespass, and fraudulent representation of their rights in violating the terms and conditions of the grant(s) for the use of the easement; their failure to remove their facilities upon the termination of the easement in accordance with the terms thereof; their actions to lease, and impose unlawful licenses and collect rents in violation of the terms of their easement; and to engage in attempts to sell rights they did not possess to the State of Texas. Plaintiffs seek to quiet title to the land; to recover all rents and revenues collected since the date of abandonment together with interest and penalties and lost profits; and to prevent the Defendant from attempting to sell Owners land to the State of Texas for improvements to State Highway 146. Owners further seek to have the Court order that the Defendant be required to remove, at its full cost and expense, all railroad facilities within the abandoned easement. The property within the easement is currently in condemnation by the State of Texas to acquire it for highway purposes and since ownership of the land is entangled in the condemnation this Court has jurisdiction to hear the title claims and to hear the three condemnation appeals. A jury trial is requested and the three condemnation cases are requested to be consolidated as all issues and parties are identical.

Exhibit A

## 3.

## PARTIES

3.1     Plaintiff Stacey Oddo is an individual who owns approximately fifteen acres of land located in the Ritson Morris League (a League contains approximately 4,428.4 acres) over which a 100-foot wide portion of the easement was located. Plaintiffs John and Betty Burkland are individuals who hold title to approximately 15 acres of land in the Ritson Morris League as marital property over which a 100-foot and 150-foot wide portion of the easement was located. Owners are residents of Harris County and the property is wholly located in said County.

3.2     Defendant Union Pacific Railroad Company (hereinafter "Railroad") is a Delaware Corporation with its headquarters located in Omaha Nebraska. It maintains offices in Texas and is registered as a Foreign Corporation with the Secretary of State of Texas. Union Pacific has its Texas offices at 350 N. Saint Paul St., Dallas Texas 752010. The Railroad may be served through its Registered Agent, C.T. Corporation Systems with offices located at 1999 Bryan St., Ste. 900, Dallas, TX 75201-3136, or through their offices at 350 N. Saint Paul St. Dallas, TX 75201-4201

## 4.

## VENUE

Venue is proper because the subject matter of the real property is located within Harris County, Texas

5

3

Exhibit A

## JURISDICTION

Jurisdiction is proper in this Court because the Plaintiff's claims involve removing a cloud on, and quieting title to real property and an appeal of the condemnation award by the Special Commissioners that involves the entire abandoned easement rather than just the western one-half the State acknowledges is the fee interest of the Plaintiffs. The State claims the eastern half of the easement by virtue of an agreement to acquire the railroad entire easement by Quit Claim. Furthermore the Court has concurrent jurisdiction over claims to ownership of land and related condemnation proceedings within Harris County

### 6.

## PLAINTIFF'S INTERESTS IN THE PROPERTY

6.1     Stacey Oddo acquired title to her two tracts of land containing approximately five (5) acres each in 2007. (Her other 5 acres are not abutting the abandoned easement and are not relevant to the proceedings herein). Her title emanates from a clear chain of ownership traced from Ritson Morris who received a Land Grant of one League of land from the government of Mexico in 1832 and which was duly translated and recorded by the Texas General Land Office in 1904. The title is an unbroken transfer of clearly identified land transfers that predates the grant of railroad easements that first appeared in 1894. See Exhibit "A", attached hereto.

6.2     John and Betty Burkland acquired title to their two tracts of land containing approximately 14.6 acres in 1994. Their title also emanates from a clear chain of

4

Exhibit A

ownership traced from Ritson Morris who received a Land Grant of one league of land from the government of Mexico in 1832 and which was duly translated and recorded by the Texas General Land Office in 1904. The title is an unbroken transfer of clearly identified land transfers that predates the grant of railroad easements that first appeared in 1894. See Exhibit "B" attached hereto.

6.3    The Owners first became aware of the actions of the railroad in 2016 when the State of Texas acting through its Department of Transportation notified them they were acquiring the easement from the railroad and wanted to acquire the underlying fee from them for their project of widening and improving State Highway 146 in Harris and Galveston Counties.  2016 is the first time the owners knew or should have known that the railroad was claiming a continued interest in the apparently abandoned easement. They did not and could not have known of the chain of title and the conditions in the original railroad easement without being trained in researching ancient handwritten records housed in the archives of Harris County. The owners and TxDOT failed to reach an agreement on the value of their fee interest to the western 50 to 75 feet of the abandoned railroad easement and they sought legal assistance to examine their titles and the status of the easement. That endeavor traced the history of the railroad through the Ritson Morris League and W. P. Harris Survey from the Sovereign to the present.

6.4    Owners properties are located in the City of Seabrook in the Ritson Morris League Abstract 52 with frontage on the west side of the roadway, also known locally as Bayport Boulevard and State Highway 146. State Highways did not come into being until the early 1950's and the designation of this roadway as a

5

Exhibit A

state highway did not occur until Harris County petitioned the Texas Highway Commission to add it in the 1950's. The State holds a roadway easement to the land within the right of way of SH-146. The new plan for expansion requires additional right of way be acquired on both sides of the current roadway. Adjoining the west side of SH-146 lies a railroad easement of 100-feet to 150-feet in width that was granted to the original Houston, LaPorte and Galveston Railroad in 1894 and 1895.

6.5 The original grant shows that the easement sold to the railroad in 1894 and 1895 was conditioned upon the construction of a rail line within one year; construction of a Depot in Seabrook within one year; and the limitation on the use of the easement for strictly railroad use including trackage for engines, cars and facilities to establish, construct and maintain the railroad and depot. A Reverter clause provided that if the conditions were not met the grant was null and void and the land would be returned to the Grantor, his successors, heirs and assigns. The Railroad demolished the Seabrook Depot between the years 1910 and 1916 (additional research on the actual date will be determined during discovery of railroad records), invoking the null and void action in the easement grant and dispossessing the railroad of its easement. Somewhere during the 1980's the railroad removed its tracks and abandoned the rail use. That also was an action that invoked the null and void provision. No documents have been found in the records of Harris County that amended, replaced or instituted new or replacement easements or rights of way by any of the seven railroads that had ownership since 1895. The State recognizes the original railroad easement but

6

Exhibit A

was unaware or ignorant of the terms of the easement grant. Over the period of 1894 to September 1, 1966 the railroad was owned by no less that seven different companies and apparently none ever examined the easement grant or if they did they ignored the conditions in the grants.

6.6    Texas law has held that railroads and highways are easements regardless of their statements in deeds. The chain of title shows that the eastern boundary of the easement was sold to Seabrook N. Sidnor in 1896 for the development of the original townsite of Seabrook. A plat (Exhibit "C") was filed with lots, blocks and streets to be built for the enjoyment and use of the purchasers of said lots and blocks. No public dedication was ever recorded and over time the public attained rights through prescription and the clear intent of the Seabrook Development Company owned by Sidnor.

6.6    The railroad proceeded to use the easement despite the conditions and terms of the easement grant as their own fee strip. They leased ground tracts along SH-146 and granted licenses and easements of their own to pipeline companies (apparently up to twenty individual pipelines) in direct violation of the rights of the fee owners. The fee rights to an abandoned railroad easement are normally shared by the fee simple owners who abut such easement and upon abandonment each abutting fee owner is entitled to a springing interest of one-half of the easement. In the present case there is only one fee owner who abuts the easement. By virtue of the Strips and Gores Doctrine, public policy and common law, the Doctrine will support the defendants right to the entirety of the 100 to 150-foot strip, based of course upon the fact that the Department of

7

Transportation cannot claim, nor has it claimed, that it is a fee owner. At present the state has announced it is acquiring the easement from the railroad and condemning all underlying fee interests in the easement strip. Such action by the railroad in representing they own an easement is fraudulent and deliberately intended to convert the owners interest into a windfall for themselves. It also places the pipeline owners in the position of having paid the wrong party for the use of the fee surface estate another act of fraud.

## 7.

### DEFENDANT'S CLAIM AS CLOUD ON TITLE

7.1     In an action to quiet title the Plaintiff must recover based on the strength of his title, not the weakness of the other party's title. *Cullins v. Foster*, 171 S.W.3d, 521,532 (Tex.App.–Houston [14th Dist] 2005,pet.denied).

7.2     The State has initiated Condemnation Proceedings on their claim of acquiring only the western half of the abandoned easement involving four contiguous tracts abutting the Owners land. See Exhibit "D, E and F" attached. The Special Commissioners made awards on that half only. Owners timely field Objections and requested a Jury Trial. Owners could not raise the claim of the remaining 50' of the original 100' easement because the State represents that it purchased the interests of the railroad using the Strips and Gores Doctrine and asserts it has marketable title. Their reliance on the Doctrine is misplaced as it applies to fee ownership (except when a necessary easement is involved to serve the fee owner) and not one easement owner seeking the rights of another easement owner. See *Angelo v Biscamp*, 441 S.W.2d 524, (Tex. May 14, 1969).

Exhibit A

The ownership and rights attendant to the easement now claimed by the State are directly contradicting the rights of the Owner. The Railroad is treating the easement as a fee strip with impunity. They are leasing land, negotiating and giving easements to pipeline companies, renting buildings and property, collecting fees for "Agreements" and threatening anyone who is on any part of the easement with legal action. In fact they lost their entitlement to the easement when they did the following:

- Constructed a Depot in Seabrook and then demolished it and stopped providing a passenger stop on the railroad between 1912 and 1916 (a condition attached to the easement grant);

- Conducted activities that were deviant from the clear requirements of the grant. It granted the right of passage over and across the easement described for the construction, operation and to maintain service of a railroad only.

- Entered into non-railroad activities and endeavors including renting land, negotiating pipeline easements, renting improvements and buildings and acting as a fee owner.

The State cannot negotiate for the purchase of an abandoned easement willfully surrendered by the railroad under the terms of their deed and then ignore the rightful fee ownership of the Owners. The conflicting claim of the existence of an active, proper and operating easement creates a continuing cloud upon the title of the Owners. The evidence will show the railroad never complied with the terms of the easement grant after approximately 1916 (the exact date is expected to be learned in discovery). It will also be shown that the owners are the direct

Exhibit A

successors in title to the land including the easement and that title should be quieted in them.

**7.3    REQUEST FOR DISCLOSURES.** Plaintiffs herein request Defendant Union Pacific Railroad Co. provide the disclosures listed under Texas Rules of Civil Procedure, Rule 194. Pursuant to Rule 194, you are requested to disclose, within 30 days of service of this request, the information or material described in Rule 194.2 (a through l).

**8.**

## CAUSES OF ACTION AGAINST THE RAILROAD

**8.1    CONVERSION** There are four elements to the claim: (1) Plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) Defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) Plaintiff made a demand for the property; (4) Defendant refused to return the property. *Apple Imports, Inc. v. Koole*, 945 S.W.2d 895, 899 (Tex. App.–Austin 1997, writ denied);

8.2    Owners property fee simple rights have been trampled upon by the deliberate, systematic, fraudulent and intentional actions to convert the land that was once an easement but abandoned according to the terms of the grant to their own use and for their own profit. Since the Railroad 1) abandoned and demolished the Seabrook Depot they agreed and did build or 2) made their first agreement for the use of easement property for a non-railroad use, they lost their easement and the land reverted to the Grantor(s), their successors, heirs and

Exhibit A

assigns. From the earlier of the dates that the two actions occurred the current Owners, and successors in interest have been prevented from their rightful, peaceable and legal use of the property. The appropriate remedy is disgorgement of all revenues collected by the railroad for the land in the easement to which title reverted together with full interest computed from the day the first violation occurred, all costs of court and expert and attorney fees, and exemplary damages in an amount to be determined by the Finder of Fact.

8.2   **FRAUD**      The elements of fraud are: (1) a representation of fact, (2) it's falsity; (3) its materiality; (4) the representer's knowledge of its falsity or ignorance of its truth; (5) the representer's intent that it should be acted upon by the person in the manner reasonably contemplated; (6) the injured party's ignorance of its falsity; (7) the injured party's reliance on its truth; (8) the injured party's right to rely thereon; and (9) the injured party's consequent and proximate injury. *Formosa Plastics v. Presidio Engineers and Contractors*, 960 S.W.2d 41 (Tex. 1998).

(1) The railroad represented that it owned the rights to the land abutting SH-146 to the public and to the exclusion of the Owners;

(2) The railroad did not have any right to lease land as their grant limited the use specifically to the construction, operation and maintenance of a railroad. Their offer to lease land for non-railroad use was false;

(3) The renting of land for non-railroad use was a proximate cause of economic loss and enjoyment of the rights of the fee owners to peaceably occupy and use their land. The illegal granting of easements to pipeline companies under the

11

Exhibit A

representation that they owned the fee interest was a violation of the owners rights in fee and of substantial economic loss.

(4) The railroad knew or should have known the terms and conditions of its right of way easement as they had at lest seven changes in ownership over the almost one-hundred years of the rights of way existence in the title transfers. A reasonable search of the deeds available to title companies and the railroad's highly experience legal teams and employees would have found the limitations;

(5) The existence of a host of rental agreements, crossing agreements and land leases confirm that the public acted in reliance of the railroad's representation that they owned a fee right of way and had no limitations on their occupancy. That was categorically false and they knew or should have known it.

(6) The Owners did not and could not have known of the terms of the original grant of the limited right of way until they were contacted by the State announcing they had bought the rights to the right of way from the railroad. In fact, and according to the terms of the right of way grant, the railroad had abandoned and terminated its right of way almost 100-years earlier. The railroad never contacted the owners or their predecessors to seek permission to enlarge their rights; to notify them of their intention to lease or grant licenses; or to in any way claim that they believed they still have rights to the easement. To the Owners the fact the railroad had ceased operations and removed its improvements supported a conclusion that they right of way had been abandoned. The Owners had no knowledge of the falsity of the railroads continuing claims they held a fee or any other rights to the land.

12

Exhibit A

(7) The Owners had no way of asserting their rights because they had no knowledge of the willful, unlawful, and intentional actions of the railroad and thus they relied upon the cessation of railroad operations and the removal of improvements as indications of abandonment. The existence of leases and licenses along SH-146 in front of their land and the fact that the early conveyances of the property in their deeds would have included the right of way upon abandonment would have required significant legal knowledge and some indication that a change had occurred. In fact the railroad continued to lease land within the abandoned and forfeited easement without any contact with the rightful owners and they continued to grant pipeline easements. The Owners relied upon the railroads knowledge of its rights and their own lack of knowledge of the terms of the grant to their economic and property rights detriment. The railroads superior, sophisticated knowledge and willful violations trampled upon the rightful fee owners.

(8) The Owners had a belief that the railroad was conforming to its right of way grant and that their ownership of the fee under the right of way would be respected. Without sophisticated management of the right of way grant and the passage of these rights over the many transfers of title to their land from 1894 to the present they could not discover the internal, willful, deliberate, and unlawful actions that the railroad conspired to and did foist upon unsuspecting adjoining and servient estate owners. They had a right to rely upon the actions that the railroad was abandoning their right of way and would act in a fair and

13

Exhibit A

conscientious manner. Their misplaced trust has been rewarded by great economic loss and violations of their property rights.

(9) The Owners have been defrauded out of all the revenues the railroad has received from the pipelines companies within the right of way; the land leases made between the railroad and occupiers of the properties fronting on SH-146, and the opportunities to develop their properties as viable commercial tracts on an important state highway in the downtown of the City of Seabrook.

Owners have been defrauded by the intentional acts of the railroad to represent and enter into lease and license agreements with unsuspecting tenants and licensees that rightfully should have been negotiating with the Owners. The railroad knew or should have known they had abandoned their easement and they had no right to negotiate with pipeline companies and the general public under their assertion that the easement was railroad property. Unsuspecting previous owners in the chain of title would have not had any way to perform the research the actual grant because specialized knowledge of the archives in the ancient handwritten deed books sequestered by Harris County were missed even by Title Companies! Current owners became aware of the claims of the railroad when TxDOT announced they were buying the easement from the railroad. This action was timely filed and is within any limitations period. Further it should be noted that at no time did the railroad ever attempt to deny the owners from crossing the railroad "easement" allowing the construction of driveways and openly allowing free access and egress. This gave the clear appearance that

14

Exhibit A

they were not excluding anyone for crossing the land while requiring agreements from anyone who signed leases and licenses. The Owners were deprived of the opportunity to lease the abandoned easement that crossed their land to the people and organizations who established commercial uses in the belief that the railroad was the fee owner when in fact the railroad had lost its easement by operation of the grant and the specific limitations that they purchased from the predecessors in title to the current owners.

The Owners seek disgorgement of all revenue received by the railroad for all pipeline easements granted; all rents and licenses for land and structures and interest since the date of the first violation of the terms of the grant of the right of way across their land; all money received by the State in the "sale" of their right of way for the construction of the new SH-146 highway; and all cost of court, expert fees and attorney fees made necessary by their actions.

8.3    **TRESPASS**  Trespass to real property is an unauthorized entry upon the land of another, and may occur when one enters, or causes something to enter, another's property. *Barnes v. Mathis*, 353 S.W.3d 760, 763 (Tex. 2011). There are three elements to a trespass cause of action: (1) entry (2) onto the property of another (3) without the property owner's consent or authorization. *Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, No. 12-0905, 2015 Tex. LEXIS 113, at *10 (Tex. February 7, 2015). When the railroad abandoned its Right of Way Easement as a result of (1) the closure and removal of the Seabrook Depot, and (2) the unauthorized conveyance of land leases and licenses unrelated to the operation of a railroad, the Right of Way reverted to the Grantors, their

Exhibit A

successors and assigns. The Owners are the successors of fee simple title to the land underlying the easement. As of the date of such acts the railroad has continued to occupy and operate the fee strip as if it were theirs. Such is clearly not the case and following the abandonment through their own action of removing the depot and then removal of the tracks, and finally the stoppage of all railroad operations they have been in unlawful occupation of the land. They have continued to deny the Owners rights to their land but have never denied crossing to their properties. A Demand was sent to the Railroad to vacate and remove their property but no answer has been received. The appropriate remedy is court ordered ouster of the railroad, surrender of all improper lease and license rights, and transfer of all pipeline easements to the Owners in accordance with their fee interests. Owners are entitled to be reimbursed for all costs and attorney fees fo these actions.

8.5   **ACTION TO QUIET TITLE.**      The railroad has been in constant occupation of the easement varying in width form 100-feet to 150-feet across the Owners lands. They have entered into negotiations with the State for a sale of their abandoned easement to be used for highway improvements to State Highway 146. The State is dealing with the wrong Party as the railroad presently, and for the last perhaps 100-years, has not had any rights to sell, lease or license to others. The Owners pray that title to the property previously encumbered by the railroad right of way easement be quieted in their fee. The evidence in support of this action includes a chain of ownership unbroken from the sovereign and a common Grantor to all the land in the Ritson Morris League,

16

Exhibit A

including the easement grants throughout the length of the railroad line through their properties. The description of their land is consistent with the conveyance of the entire fee with an encumbrance of the easement and the terms that resulted in abandonment and reversion. All rights, titles, and interest in the fee by General Warranty Deeds recorded properly in the Harris County Clerks Real Property Records support the claim. Texas law supports the well-settled decisions that vest abandonment of railroad easements in the abutting fee owners and not in abutting easement holders. The State does not and cannot show any conveyance to the public in fee to the original or presently existing State Highway 146. No such conveyance or dedication is of record and under law the state now holds an easement for highway purposes. Upon completion of its condemnation action it will be acquiring fee interests in a portion of the Owners property.

The evidence will show:

1) The easement and the land of the Owners come from a common Grantor;

2) The Grantee of the Town of Seabrook (Seabrook N. Sidnor) laid out the town site with a road abutting the railroad easement for the access and benefit of the buyers of the lots being sold;

3) No dedication to the public nor acquisition of the roadway was ever conveyed and thus the public acquired a road easement by prescription;

4) The road was added to the Harris County Road Log without any acquisition of rights (presumably claiming prescriptive rights) and then transferred to the State by order of the Harris County Commissioners.

Exhibit A

5) The Owners are the only fee simple ownership abutting the railroad abandoned right of way and thus their fee interest was vested upon the abandonment and reversion according to the terms of the grant to the railroad. The compensation and legal description of the land being acquired will be settled by the Court in this combined case.

6) The legal description of the property being sought to quiet title includes the full 100- to 150 feet of the easement further described in Exhibits "G, H and I", attached.

8.6. **OBJECTION TO SPECIAL COMMISSIONERS AWARD.** The Owners appeared at the Special Commissioners Hearing called to hear and decide the Market Value of the Takings. There were three such hearings before three separate panels. In each the Owners raised the issue of the takings of only a part of their fee property rather than the fee in the entire easement. That was not an issue within the jurisdiction of the County Courts of Law(s). They heard the State introduce expert opinion that the land they owned in fee simple was "worthless" and nominal awards were proposed. The State relied upon their acquisition of the easement of the railroad as constituting the basis for what they described as "cleaning up and acquiring whatever rights might have existed in the underlying land in the western one-half of the right of way". There was, in their opinion, no economic value in the fee and the land. The evidence will show that the property to be taken is at least twice the size as described by the State when the eastern half is properly Quieted in the Owners, as described above. In addition, and even if the eastern half is ultimately determined to not be the rightful property of the

Exhibit A

Owners, the land has a considerable value as a strategic and massive pipeline and utility corridor. The Owners property accommodates over a dozen pipelines carrying gas and crude oil from the Gulf of Mexico to the refineries in Houston/Baytown and many product lines from Texas City, and active well fields both on land and in Galveston Bay. The evidence will show that the land within the abandoned right of way can accommodate up to 100 pipelines and that each line, dependent upon its diameter will produce significant revenues. There are about 12 pipelines in place leaving room for up to 88 more in the future. The amount of lost revenue will be provided by an Expert Appraiser at trial. But for the highway project the land will continue to develop more pipelines just as it has over the last many years. Based on this calculation the just compensation due is the amount of revenue lost as a result of the Taking.

8.7    **Fees and Costs.**    The Owners cannot receive an award of Attorney fees in a Suit to Quiet Title. However, the law provides that in a cases where the Jury finds the award for a condemnation action is greater than the amount awarded by the Special Commissioners the Defendant (here "Owners") are entitled to Attorney fees, all costs of experts and fees related to the appeal of the award. Tex.Prop.Code. §21.047. In the present case the quieting of title is inextricably tied to the ownership of the land being taken and as such any amount above the nominal award of the Special Commissioners justifies the full reimbursement of all fees and costs.

8.8    **Request for Jury Trial.**    Plaintiff's request consolidation of the three condemnation cases and actions to quiet title and demand a trial by Jury.

19

Exhibit A

Respectfully Submitted

Thomas C. Knickerbocker
Attorney-at Law
Texas BAR 24058936
The Knickerbocker Law Firm, PLLC
2503 Dauphin Court
Nassau Bay, Texas 77058
(p) (713) 818-4155
(f) (281) 339-7300
Thomas@klawtexas.com

Exhibit A

9/18/2017 12:05:17 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 19491695
By: CUERO, NELSON
Filed: 9/16/2017 11:56:02 AM

# 2017-61504 / Court: 055
## UNSWORN DECLARATION/VERIFICATION
### (Pursuant to CPRC § 132.001)

My full name is <u>Thomas C. Knickerbocker</u>, my date of birth is July 15, 1941 and my address is <u>2503 Dauphin Court, Nassau Bay, Texas 77058</u> and U.S.A. I declare under penalty of perjury that the foregoing Original Petition, Exhibits and Enclosures are true and correct.

Executed in Harris County, State of TEXAS, on the <u>8th</u> day of September 2017

Typed or written name:       Thomas C. Knickerbocker

Exhibit A

Exhibit A

9/18/2017 12:05:17 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 19491695
By: CUERO, NELSON
Filed: 9/16/2017 11:56:02 AM

## CERTIFICATE OF SERVICE

"I hereby certify that a true and correct copy of the foregoing Original Petition in the matter of *Stacey Oddo and John & Betty Burkland v Union Pacific Railroad Inc.*, filed with the Harris County District Clerk was, by my hand delivered on September 16, 2017 to:

Samantha K. Diaz
Office of the Attorney General
State of Texas
Transportation Division
P.O. Box 12548
Austin, Texas 78711-2548

via prepaid USPS Certified Mail, Article # 7016 1370 0002 2855 0939
Domestic Return Receipt PS Form 3811 used."


Thomas C. Knickerbocker
State BAR No. 24058936

The Knickerbocker Law Firm PLLC
2503 Dauphin Court
Nassau Bay, Texas 77058
Ph:     (713) 818-4155
Email: thomas@klawtexas.com

Exhibit A



2017 61504 / Court 055

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THIS DESCRIBED REAL PROPERTY BECAUSE OF
COLOR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY

ATTEST:   AUG 0 3 2017
STAN STANART, County Clerk
Harris County, Texas

_____ Deputy
Gabriel S. Infante



Exhibit A



SEABROOK

A subdivision of the town part of the
RITSON.MORRIS League
HARRIS Co. TEXAS

ANY PROVISIONS HEREIN WHICH RESTRICT THE SALE, RENTAL
OR USE OF THIS DESCRIBED REAL PROPERTY BECAUSE OF
COLOR RACE IS INVALID AND UNENFORCEABLE UNDER
THE FEDERAL LAW.

A CERTIFIED COPY

AUG 03 2017

ATTEST:
STAN STANART, County Clerk
Harris County, Texas

_____ Deputy
Gabriel S. Infante



Exhibit A

CSJ: 0389-05-095
PARCEL: 211

NO. 1085065

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | CONDEMNATION PROCEEDING |
| | § | |
| V. | § | COUNTY CIVIL COURT AT LAW NO. 2 |
| | § | |
| STACEY ODDO, ET AL | § | H A R R I S   C O U N T Y ,   T E X A S |

**FIRST AMENDED PETITION FOR CONDEMNATION**

TO SAID HONORABLE JUDGE:

Now comes the State of Texas, herein called Plaintiff, acting by and through the Texas

Transportation Commission, represented herein by the Attorney General of Texas who, at the request

of the Texas Transportation Commission, brings this action and files this, its original First Amended

Petition for the condemnation of the real property and interests or rights pertaining thereto as

hereinafter-described, and shows that the owners of said land and their addresses for service are as

follows: STACEY ODDO, whose address for service, 1201 Bayport Boulevard, Seabrook, Texas

77586; THE UNKNOWN HEIRS OF JAMES CONVERSE, whose names and whereabouts are unknown;

THE UNKNOWN HEIRS OF SAM ALLEN, whose names and whereabouts are unknown; RICHELLE

MENEFEE, or if Deceased, her Unknown Heirs (as possible heirs of Sam Allen, Deceased), whose

whereabouts are unknown; CHRIS VAN MAAREN, or if Deceased, his Unknown Heirs (as possible

heirs of Sam Allen, Deceased), whose whereabouts are unknown; KATHLEEN MENEFEE HALL, or

if Deceased, her Unknown Heirs (as possible heirs of Sam Allen, Deceased), whose whereabouts are

unknown; JENNIFER MENEFEE, or if Deceased, her Unknown Heirs (as possible heirs of Sam Allen,

Deceased), whose whereabouts are unknown; CHRISTOPHER MENEFEE, or if Deceased, his

Unknown Heirs (as possible heirs of Sam Allen, Deceased), whose whereabouts are unknown;

Exhibit A

5/30/2017 6:58:30 AM
Stan Stanart
County Clerk
Harris County

CSJ:      0389-05-095
PARCEL:  213

NO. 1085545

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | CONDEMNATION  PROCEEDING |
| | § | |
| V. | § | COUNTY CIVIL COURT AT LAW NO. 2 |
| | § | |
| JOHN M. BURKLAND, ET UX, ET AL | § | HARRIS  COUNTY,  TEXAS |

### FIRST AMENDED PETITION FOR CONDEMNATION

TO SAID HONORABLE JUDGE:

Now comes the State of Texas, herein called Plaintiff, acting by and through the Texas Transportation Commission, represented herein by the Attorney General of Texas who, at the request of the Texas Transportation Commission, brings this action and files this, its original First Amended Petition for the condemnation of the real property and interests or rights pertaining thereto as hereinafter-described, and shows that the owners of said land and their addresses for service are as follows: JOHN M. BURKLAND, whose address for service is 1102 Lake Country Drive, Taylor Lake Village, Texas 77586; BETTY BURKLAND, whose address for service is 1102 Lake Country Drive, Taylor Lake Village, Texas 77586; THE UNKNOWN HEIRS OF P.E. NICHOLSON, SR., DECEASED, whose names and whereabouts are unknown; THE UNKNOWN HEIRS OF C.M. NICHOLSON, DECEASED, whose names and whereabouts are unknown; J.W. NICHOLSON AND WIFE, ANNIE NICHOLSON, or if Deceased, their Unknown Heirs (as possible heirs of P.E. Nicholson, Sr., and wife C.M. Nicholson, Deceased), whose whereabouts are unknown; ELIZA A. ARNOLD AND HUSBAND, H.A. ARNOLD, or if Deceased, their Unknown Heirs (as possible heirs of P.E. Nicholson, Sr., and wife C.M. Nicholson, Deceased), whose whereabouts are unknown; MARY C. IDLEBROOK AND HUSBAND, JOHN E. IDLEBROOK, or if Deceased, their Unknown Heirs (as possible heirs of P.E. Nicholson, Sr., and wife C.M. Nicholson, Deceased), whose whereabouts are unknown; ELIJAH N.

Exhibit A

## 2017-61504 / Court: 055

10/10/2016 12:22:03 PM
Stan Stanart
County Clerk
Harris County

CSJ: 0389-05-095
PARCEL: 212

NO. 1083924

| THE STATE OF TEXAS | § | CONDEMNATION PROCEEDING FILED |
|---|---|---|
| | § | |
| V. | § | IN THE COUNTY CIVIL COURT AT LAW NO. 1 |
| | § | |
| JOHN M. BURKLAND, ET UX, ET AL. | § | OF HARRIS COUNTY, TEXAS |

### PETITION FOR CONDEMNATION

TO SAID HONORABLE JUDGE:

Now comes the State of Texas, herein called Plaintiff, acting by and through the Texas Transportation Commission, represented herein by the Attorney General of Texas who, at the request of the Texas Transportation Commission brings this action and files this original Petition for the condemnation of the real property and interests or rights pertaining thereto as hereinafter described, and shows that the owners of said land and their addresses for service are as follows: JOHN M. BURKLAND AND WIFE, BETTY BURKLAND, 1102 Lake Country Drive, Taylor Lake Village, Texas 77586; and WELLS FARGO BANK, NATIONAL ASSOCIATION, by serving its Registered Agent for Service, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218, hereinafter called Defendant (whether one or more) or called owner (whether one or more) and shows as follows:

1.

It is intended that discovery, if any, will be conducted under Level 3.

2.

That Defendant is the owner of the real property situated in Harris County, Texas, as described in Exhibit "A" attached hereto and incorporated herein for all purposes.

Exhibit A

## EXHIBIT E
## LEGAL DESCRIPTION OF ABANDONED EASEMENT WITHIN THE FEE ESTATE OF STACEY ODDO

A tract of land located in the Ritson Morris League, Abstract 52, Harris County Texas containing 1.1466 acres (49,950 square feet) of land situated in the Ritson Morris League, Abstract 52, Harris County Texas being part of a 11.15 acre tract of land comprised of the sum of a 5 acre tract of land conveyed from Bennie Oddo to Stacey Oddo by deed dated May 23, 2007 and recorded under Harris County Clerk's File (H.C.C.F.) No. 20070323267, Film Code No. 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 of the Official Public Records of Real Property Harris County, Texas (O.P.R.O.R.P.H.C.T.) and a 5 acre tract of land conveyed from Benestante Investments Ltd. to Stacey Oddo by deed dated May 23, 2007 and recorded under H.C.C.F. No. 20070323268, Film Code 44-77-1382 of said Official Public Records, and a 0.5733 of an acre of land that is the western half of the abandoned Union Pacific Railroad Easement that abuts said five acre tracts and a 0.5733 acre tract of land that is the eastern half of the abandoned Union Pacific Railroad easement said combined eastern and western easement tracts being more particularly described by metes and bounds as follows:

COMMENCING at a found ¾ inch iron pipe in the northern line of said Oddo 5 acre tract of record under H.C.C.F. No. 20070323267, Film Code No. 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 of said Official Public Records, being the southwesterly corner of that certain called 5.182 acre tract of land conveyed from Rex L. Meador to Houston Lighting and Power Company (now Centerpoint Energy, Inc.) by deed dated July 10, 1961 and recorded under H.C.C.F. No. B375373, Film Code No. 056-134-1204 of said Official Public Records;

THENCE: North 87⁰ 10" 24" East a distance of 120.92 feet along the northerly line of said 5 acre tract, being the southerly line of said 5.182 acre tract to a point in the proposed westerly right-of-way line of State Highway 146 (width varies), being the northeasterly corner of said 5 acre tract, same being the southeasterly corner of said 5.182 acre tract and for the PONT OF BEGINNING of the parcel herein described and having surface coordinates of N=13,777,620.73, E=3,231,533.53 and located 141.69 feet right of and perpendicular to baseline station 332+11.99, from which a found 5/8" iron rod bears North 05⁰ 10' West, a distance of 1.42 feet:

1) THENCE, North 79⁰ 51' 38" East, a distance of 100 feet to a point in the westerly right-of-way of the existing State Highway 146 (width varies) (no recording information found);

2) THENCE, South 10⁰ 08' 22" East, a distance of 499.50 feet along the westerly right-of-way of the existing State Highway 146 to a point for corner;

1

Exhibit A

3) THENCE, South 79° 31' 58" West , a distance of 100 feet in the proposed westerly right-of-way of State Highway 146, same being the northeasterly corner of that certain called 5.337 acre tract of land conveyed from Cicely Margaret Palms and Edward F. Palms and wife Beverly Palms to John M. Burkland by deed dated May 11, 1994 and recorded under H.C.C.F. No. P855727, Film Code No. 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 of said Official Public Records, also being the southeasterly corner of the said Oddo 5 acre tract of record under H.C.C.F. No. 20070323268. Film Code No. 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 of said Official Public Records and located 141.37 feet right of and perpendicular to baseline station 337+10.96, from which a found 1 inch iron rod bears North 79° 52' East, 0.43 feet and from which a found 5/8-inch iron rod bears South 10° 00' 50" East, a distance of 11.10 feet to a point for corner;

4) THENCE, North 10° 08" 22" West, a distance of 499.50 feet along the proposed westerly right-of-way of State Highway 146 to the POINT OF BEGINNING and containing 1.1466 acres (49,950 sq. ft.) of land.

Exhibit A

**EXHIBIT F**
**LEGAL DESCRIPTION OF ABANDONED EASEMENT WITHIN THE FEE**
**ESTATE OF JOHN M. BURKLAND**

A tract of land located in the Ritson Morris League, Abstract 52, Harris County Texas containing 1.5564 acres (24,236.78 square feet) of land situated in the Ritson Morris League, Abstract 52, Harris County Texas being part of a 6.1339 acre tract of land comprised of the sum of a 5.3557 acre tract of land conveyed from Cicely Margaret Palms and Edward F. Palms and wife Beverly Palms to John M. Burkland by deed dated May 11, 1994 and recorded under Harris County Clerk's File (H.C.C.F.) No. P855727, Film Code No. 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 of the Official Public Records of Real Property Harris County, Texas (O.P.R.O.R.P.H.C.T.) and a 0.7882 of an acre tract of land that is the westerly half of the abandoned Union Pacific Railroad Easement that abuts said 5.3557 acre tract and a 0.7882 acre tract of land that is the eastern half of the abandoned Union Pacific Railroad easement said combined eastern and western easement tracts being more particularly described by metes and bounds as follows:

COMMENCING at a found 5/8- inch rod with "GS" cap at the northwesterly corner of said 5.3557 acre tract, being the southwesterly corner of that certain called 5 acre tract conveyed from Benestante Investments Ltd. To Stacey Oddo by deed dated May 23, 2007 and recorded under H.C.C.F. No. 20070323268, Film Code No. 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 of said Official Public Records;

THENCE: North $87^0$ 22" 30" East, a distance of 442.00 feet along the northerly line of said 5.3557 acre tract, being the southerly line of said 5 acre tract to a point in the proposed westerly right-of-way line of State Highway 146 (width varies), being the northeasterly corner of said 5.3557 acre tract, same being the southeasterly corner of said 5 acre tract and for the PONT OF BEGINNING of the parcel herein described and having surface coordinates of N=13,777,129.03, E=3,231,621.46 and located 141.37 feet right of and perpendicular to baseline station 337+10.96, from which a found 1" iron bolt bears North $79^0$ 52' East, 0.43 feet and from which a found 5/8-inch iron rod bears South $10^0$ 00' 50" East, a distance of 11.10 feet:

1) THENCE, North $79^0$ 51' 38" East, a distance of 100 feet to a point in the westerly right-of-way of the existing State Highway 146 (width varies) (no recording information found);

2) THENCE, South $10^0$ 08' 22" East, a distance of 677.93 feet along the westerly right-of-way of the existing State Highway 146 to a point for corner;

3) THENCE, South $79^0$ 31' 58" West , a distance of 100 feet to a found 1-1/2-inch iron pipe at an angle point in the in the proposed westerly right-of-way

1

Exhibit A

of State Highway 146, same being the southeasterly corner of said 5.3557 acre tract and located 141.07 feet right of and perpendicular to baseline station 343+88.88;

4) THENCE, North $10^0$ 08" 22" West, a distance of 677.93 (called 666.92 per deed) feet along the proposed westerly right-of-way of State Highway 146 to the POINT OF BEGINNING and containing 1.5764 acres (68,667.98 sq. ft.) of land).

Exhibit A

## EXHIBIT G
## LEGAL DESCRIPTION OF ABANDONED EASEMENT WITHIN THE FEE
## ESTATE OF JOHN M. BURKLAND

A tract of land containing 1.3455 acres (58,608 square feet) of land situated in the Ritson Morris League, Abstract 52, Harris County Texas being part of a 10.2336 acre tract of land comprised of the sum of a 9.5215 acre tract of land conveyed from Technical Automation Services Corp. to John M. Burkland and wife Betty J. Burkland by deed dated April 22, 1996, and recorded under Harris County Clerk's File (H.C.C.F.) No. R893396, Film Code No. 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 of the Official Public Records of Real Property Harris County, Texas (O.P.R.O.R.P.H.C.T.) and a 0.7121 of an acre tract of land that is the westerly half of the abandoned Union Pacific Railroad Easement that abuts said 9.5215 acre tract and a 0.7121 acre tract of land that is the eastern half of the abandoned Union Pacific Railroad easement said combined eastern and western easement tracts being more particularly described by metes and bounds as follows:

COMMENCING at a found 5/8- inch rod in the northerly right-of-way line of Nasa Road 1 (also known as Nasa Parkway and formerly known as Lidstone Avenue) (width varies) of record under Volume 1, Page 50 of the Map Records of Harris County Texas (H.C.M.R.), by deed dated September 20, 1962 and recorded under Volume 4969, Page 576 of said Deed Records, by deed dated August 8, 1996 and recorded under H.C.C.F. No. S185982 of said Official Public records, being the southerly line that certain calculated 0.9530 acre tract conveyed from Charles G. Thrash, Jr., Trustee to Houston Lighting and Power Company (now known as CenterPoint Energy, Inc.) by deed dated January 16, 1961 and recorded under Volume 4385, Page 519 of said Deed Records;

THENCE, North 37° 38' 48" East, a distance of 19.21 feet along the existing northerly right-of-way line of Nasa Road 1, being the southerly line of said calculated 0.9530 acre tract of land to a found 5/8-inch iron rod on the proposed westerly right-of-way line of State Highway 146 (width varies) same being the southeasterly corner of said calculated 0.9530 acre tract;

THENCE, North 10° 08' 22" West, a distance of 194.34 feet along the proposed westerly right-of –way line of State Highway 146, same being the easterly line of said calculated 0.9530 acre tract, the easterly right-of-way of Second Street (50 feet in width) (an unimproved, unopened street) of record under Volume 1, Page 50 of the Harris County Map Records (H.C.M.R., passing at 120.92 feet a found 5/8-inch iron rod which bears North 79° 51' East, a distance of 0.21 feet and continuing to a found iron rod at the northeasterly corner of Second Street, being the southeasterly corner of said 9.5215 acre tract and for the POINT OF BEGINNING of the parcel herein described and having surface coordinates of N= 13,776,054.65, E= 3,231,788.20 and located 165.89 feet right of and perpendicular to baseline station 347+97.92;

1

Exhibit A

1) THENCE, North 10° 08' 22" West, a distance of 436.50 feet continuing along the proposed westerly right-of-way of State Highway 146, passing at 297.92 feet a set 5/8-inch iron rod with a Texas Department of Transportation (TxDOT) aluminum cap located 166.02 feet right of and perpendicular to baseline station 345+00.00 and continuing to a set 5/8-inch iron rod with TxDOT Aluminum Cap in the southerly line of that certain called 5.337 acre tract of land conveyed from Cicely Margaret Palms and Edward F. Palms and wife, Beverly Palms to John M. Burkland by deed dated May 11, 1994 and recorded under H.C.C.F. No. P855727, Film Code No. 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 of said Official Public Records, being the northeasterly corner of said 9.5215 acre tract and located 166.08 feet right of and perpendicular to baseline station 343+61.41;

2) THENCE, South 52° 25' 52" East, a distance of 37.15 feet continuing along the proposed westerly right-of-way of State Highway 146, being the southerly line of said 5.3557 acre tract to a found 1-12/-inch iron pipe at an angle point in the proposed westerly right-of-way line of State Highway 146, being the southeasterly corner of the said 5.3557 acre tract;

3) THENCE North 79° 51' 38: East a distance of 100.02 feet to a point in the existing westerly right-of-way line of State Highway 146 (width varies)(no recording information found);

4)

5) THENCE, South 10° 08' 22" East, a distance of 109.96 feet along the westerly right-of-way of the existing State Highway 146 to a point for corner;

6) THENCE, South 52° 25' 52" East, a distance of 37.15 feet to a point in the existing right-of-way line of State Highway 146 (width varies)(no recording information found);

7) THENCE, South 10° 08' 22" East, a distance of 271.62 feet along the westerly right-of-way of the existing State Highway 146 to a point for corner;

8) THENCE, South 79° 51' 38: West, a distance of 150 feet to the POINT OF BEGINNING and containing 1.3455 acres (58,608 square feet) of land.

Exhibit A

**CAUSE NUMBER**    201761504

---

| | |
|---|---|
| **PLAINTIFF**: ODDO, STACEY | **In The** 55th |
| vs. | **Judicial District Court of** |
| **DEFENDANT**: UNION PACIFIC RAILROAD CO INC | **Harris County, Texas** |

## CITATION CORPORATE

**THE STATE OF TEXAS**
**County of Harris**

TO: UNION PACIFIC RAILROAD COMPANY (A DELAWARE CORPROATION)
    BY SERVING THROUGH ITS REGISTERED AGENT C T CORPORATION
    1999 BRYAN ST STE 900    DALLAS TX 75201 - 3136

Attached is a copy of   PLAINTIFF'S ORIGINAL PETITION AND REQUEST FOR DISCLOSURE.

This instrument was filed on the    16th    day of    September   , 20   17  , in the above cited cause number and court. The instrument attached describes the claim against you.

    **YOU HAVE BEEN SUED**; you may employ an attorney. If you or your attorney do not file a written answer with the District Clerk who issued this citation by 10:00 a.m on the Monday next following the expiration of 20 days after you were served this citation and petition, a default judgment may be taken against you.

**TO OFFICER SERVING:**

    **This Citation was issued under my hand** and seal of said Court, at Houston, Texas, this    25th   day of    September     , 20   17  .

*Chris Daniel*

**CHRIS DANIEL, District Clerk**
Harris County, Texas.
**201 Caroline, Houston, Texas 77002**
**P.O.Box 4651, Houston, Texas 77210**

Issued at request of:
KNICKERBOCKER, THOMAS CLAY
2503 DAUPHIN COURT
NASSAU BAY, TX 77058
TEL: (713) 818-4155
Bar Number: 24058936

**Generated by**: CHAMBERS, WANDA RENEE
ULW//10779821

---

### OFFICER/AUTHORIZED PERSON RETURN

I received this citation on the _____ day of _____, 20 _____ at _____ o'clock ___ .M., endorsed

the date of delivery thereon, and executed it at _____
                                       (STREET ADDRESS)                               (CITY)

in _____ County, Texas on the _____ day of _____, 20 _____, at _____ o'clock ___ .M.,

by delivering to _____, by delivering to its
                              (THE DEFENDANT CORPORATION NAMED IN CITATION)

_____, in person, whose name is _____.
(REGISTERED AGENT, PRESIDENT, or VICE-PRESIDENT)

a true copy of this citation, with a copy of the _____ Petition attached,
                                       (DESCRIPTION OF PETITION, E.G. "PLAINTIFFS ORIGINAL")

and with accompanying copies of _____.
                           (ADDITIONAL DOCUMENTS, IF ANY, DELIVERED WITH THE PETITION)

I certify that the facts stated in this return are true by my signature below on the _____ day of _____, 20 ____.

FEE: $ _____           By: _____
                                          (SIGNATURE OF OFFICER)

                        Printed Name: _____

                        As Deputy for: _____

**Affiant Other Than Officer**                                    (PRINTED NAME & TITLE OF SHERIFF OR CONSTABLE)

**Exhibit A**

 CT Corporation

TO: Sarah Rief, STOP 1580
Union Pacific Railroad Company
1400 Douglas St
Omaha, NE 68179-0002

RE: **Process Served in Texas**

FOR: Union Pacific Railroad Company (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | STACEY ODDO, etc. and JOHN BURKLAND, etc., Pltfs. vs. Union Pacific Railroad Co., Dft. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Citation, Petition, Attachment(s), Certificate(s), Exhibit(s) |
| **COURT/AGENCY:** | 55th Judicial District Court Harris County, TX Case # 201761504 |
| **NATURE OF ACTION:** | Quiet Title |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Dallas, TX |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/06/2017 at 10:00 |
| **JURISDICTION SERVED :** | Texas |
| **APPEARANCE OR ANSWER DUE:** | By 10:00 a.m. on the Monday next following the expiration of 20 days after service |
| **ATTORNEY(S) / SENDER(S):** | Thomas C. Knickerbocker The Knickerbocker Law Firm, PLLC 2503 Dauphin Court Nassau Bay, TX 77058 713-818-4155 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/07/2017, Expected Purge Date: 10/12/2017 |
| | Image SOP |
| | Email Notification, Sarah Rief sjrief@up.com |
| | Email Notification, Catherine Martin camartin@up.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 1999 Bryan Street Suite 900 Dallas, TX 75201 |
| **TELEPHONE:** | 214-932-3601 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

Exhibit A

From: **Deacon, Christine** Christine.Deacon@huschblackwell.com
Subject: Cause No. 2017-61504; Oddo v. Union Pacific
Date: October 27, 2017 at 1:56 PM
To: thomas@klawtexas.com
Cc: Sands, Afton Afton.Sands@huschblackwell.com



Good afternoon Mr. Knickerbocker,

Attached is a Rule 11 Agreement extending the time to answer to December 4, 2017, in connection with the referenced matter. If acceptable, kindly sign it and return it to us via e-mail today.

We greatly appreciate your quick attention to this matter.

Thank you,
**Christine Deacon**
**Legal Support Team Specialist**

**HUSCH BLACKWELL LLP**
111 Congress Avenue, Suite 1400
Austin, TX 78701-4093
Direct: 512.370.3466
Fax: 512.479.1101
Christine.Deacon@huschblackwell.com
huschblackwell.com

# HUSCH BLACKWELL

Afton D. Sands, Partner
111 Congress Avenue, Suite 1400
Austin, TX 78701-4043
Direct: 512-479-1143
Fax: 512-481-4856
afton.sands@huschblackwell.com

October 26, 2017

VIA ELECTRONIC MAIL thomas@klawtexas.com

Thomas C. Knickerbocker
The Knickerbocker Law Firm, PLLC
2503 Dauphin Court
Nassau Bay, Texas 77058

Re: Cause No. 2017-61504; *Stacy Oddo and John Burkland, et ux. v. Union Pacific Railroad Company*; in the 55th Judicial District Court of Harris County, Texas.

Dear Mr. Knickerbocker:

Pursuant to Texas Rule of Civil Procedure 11, this letter serves to memorialize the agreement between the parties to extend the deadline for Defendant Union Pacific Railroad Company to file its responsive pleading and/or answer to Plaintiff's Original Petition to **December 4, 2017.**

Please confirm this agreement by signing in the space provided for your signature below. Thank you for consideration of this request.

Exhibit A

Yours truly,

Afton D. Sands

AGREED:

Thomas C. Knickerbocker
Counsel for Plaintiffs

AUS-6436252-1

Exhibit A